### UNITED STATES DISTRICT COURT FOR
### THE NORTHERN DISTRICT OF WEST VIRGINIA

**KEVIN X. MCWILLIAMS,**

      **Plaintiff,**

**v.**                                                    **Civil Action No. 1:19cv76**
                                                         **(Judge Kleeh)**

**J. FRAME, Senior Officer; S. JAMISON,**
**Maintenance Worker Foreman; A. KUHL,**
**Lieutenant; A. WEAVER, Senior Officer;**
**J. BARNES, Senior Officer Specialist,**

      **Defendants.**

### REPORT AND RECOMMENDATION

### I. Procedural History

On April 11, 2019, the *pro se* Plaintiff, an inmate at FCI Gilmer in Glenville, West Virginia

initiated this case by filing a <u>Bivens</u>[1] civil rights complaint against the above-named Defendants.

ECF No. 1. Along with his complaint, Plaintiff filed a Motion for Leave to Proceed *in forma*

*pauperis* with supporting documents. ECF Nos. 2, 3, 4. By Order entered May 13, 2019, Plaintiff

was granted permission to proceed *in forma pauperis* ("IFP") and instructed to pay an initial partial

filing fee ("IPFF"). ECF No. 7. On May 28, 2019, Plaintiff paid the IPFF. ECF No. 10.

On April 22, 2020, the undersigned conducted a preliminary review of the file, determined

that summary dismissal was not appropriate, and directed the United States Marshal Service to

serve the complaint. Accordingly, an order to answer was entered. ECF No. 26. On June 25, 2020,

Plaintiff filed a motion for sanctions against FCI Gilmer for retaliation/staff violation of

constitutional rights. ECF No. 41. On June 29, 2020, the Defendants filed a Motion to Dismiss or

---

[1] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Alternatively, Motion for Summary Judgment, along with a memorandum in support, attaching numerous exhibits and a sworn affidavit.  ECF Nos. 42, 43. Defendants also filed a motion to exceed the page limits, and a motion to seal, attaching a DVD of video footage and copies of excerpts from Plaintiff's medical records. ECF Nos. 44, 45. On June 30, 2020, by separate Orders, Defendants' motion to seal and to exceed the page limits were granted, and because Plaintiff was proceeding *pro se,* a Roseboro Notice was issued.  ECF Nos. 46, 47, 48. Plaintiff's motion for sanctions against FCI Gilmer was also denied the same day. ECF No. 50.  On July 8, 2020, Plaintiff filed a letter motion for an extension of time, asserting that he had not received a copy of Defendants' response and was unaware that it had been filed until he received the Roseboro Notice. ECF No. 53. By Order entered July 9, 2020, the Defendants were directed to resend a copy of their dispositive motion to Plaintiff via certified mail, return receipt requested, and to file proof of the same with the Court; and Plaintiff was granted a twenty-one day extension of time to respond, from the date he received his copy.  ECF No. 54.

On July 20, 2020, Plaintiff filed two letter motions to view the video produced by Defendants. ECF Nos. 58, 59. On July 21, 2020, Plaintiff filed a letter motion to conduct discovery. ECF No. 60. On July 22, 2020, Plaintiff filed another letter motion to view the video.  ECF No. 61. On August 7, 2020, the Defendants filed a Response to Letter from Plaintiff Requesting to View Video Recordings. ECF No. 63. By separate Orders entered on August 11, 2020, Plaintiff's three letter motions to view the video were denied as moot and his motion to conduct discovery was denied without prejudice as premature. ECF Nos. 64, 65.

On August 13, 2020, Plaintiff filed a Motion to Suspend and/or Continue Roseboro Notice; a Motion to Appoint Counsel; and a Motion for Sanctions Against Defendants' Counsel for Fraud Upon the Court.  ECF Nos. 66, 67, 68.  A faxed copy of a Declaration from Plaintiff was also

received, ostensibly from a relative of Plaintiff's.  ECF No. 69.  Plaintiff also filed a Motion to

Suspend and/or Continue Roseboro Notice/Defendant's Motion to Dismiss or in the Alternative,

Motion for Summary Judgment. ECF No. 74.

On August 17, 2020, Plaintiff filed another Declaration [ECF No. 70] and a letter regarding

prior filings. ECF No. 71. On August 18, 2020, Plaintiff filed a duplicate declaration. ECF No. 73.

By separate Orders entered August 19, 2020, Plaintiff's motion for counsel was denied; his motion

to have the Roseboro Notice suspended or continued was denied in part and his construed motion

for an extension of time to respond to the Roseboro was granted in part; and his second motion for

sanctions were denied.   ECF Nos. 75, 76, 77. A Report and Recommendation was entered,

recommending that Plaintiff's construed motion for leave to amend the complaint be denied as

futile.  ECF No. 78.  On August 20, 2020, Plaintiff filed a Motion for Court Review of Video

Footage and Sanctions Against Defendants' Counsel for Tamperering [sic] with Evidence by

Giving Plaintiff Altered/Modified Video  Footage Hendering [sic] Plaintiff['s] Ability to View

Evidence and Respond [ECF No. 79];[2] a Motion to Amend Request for Sanctions and Request to

Strike Government[']s Exhibit [ECF No. 80]; and another Motion for Discovery. ECF No. 81.

On September 11, 2020, Plaintiff filed an objection to the Report and Recommendation

regarding the motion to amend [ECF No. 84]; a Motion to Reconsider Plaintiff's Motion to View

Video Evidence/Objection to Ruleing [sic] [ECF No. 85];[3] and two responses in opposition to the

defendants' dispositive motions. ECF Nos. 86, 87.  On September 25, 2020, the Defendants filed

a Reply. ECF No. 93. On October 2, 2020, Plaintiff filed a Reply/Objections to Memoranda by

Defendants. ECF No.  94. On October 13, 2020, Plaintiff moved to amend his complaint. ECF No.

---

[2] A copy of the DVD of video footage was enclosed with this motion.

[3] It is unclear why Plaintiff seeks reconsideration of a motion that has not yet been ruled upon.

95. On October 26, 2020, by separate motions, Plaintiff moved for Reconsideration of the Order Denying his Motion for Discovery and Request for Inclusion of Additional Facts [ECF No. 97] and for Reconsideration of Order Denying Sanctions, and Request for Inclusion of Additional Facts. ECF No. 98. On December 10, 2020, Plaintiff filed an Addendum to Plaintiff's Response to Defendants' Motion to Dismiss.  ECF No. 101.

This case is before the undersigned for a Report and Recommendation ("R&R") on Defendant's dispositive motion.

## II. Contentions of the Parties

### A. Plaintiff's Complaint

In the complaint, the Plaintiff raises an Eighth Amendment violation claim of excessive force, alleging that on January 10, 2018 [ECF No. 1-2 at 1], while he was outside on FCI Gilmer's compound, an inmate named "Jackson" engaged in a fight with another (unknown) inmate; when that fight ended, Jackson then turned and attacked Plaintiff, who was standing with his hands in his pockets. ECF No. 1-4 at 1 - 2. After being struck five or six times in the face and/or torso, Plaintiff finally defended himself by hitting Jackson back once; Jackson fell to the ground. See ECF No. 1-1 at 2. Plaintiff alleges that staff then put both inmates on the ground. ECF No. 1-4 at 2. At that point, Defendant Jamison, a maintenance worker foreman, attacked Plaintiff while he lay on the ground, already handcuffed and not resisting.  Id.; see also ECF No. 1-1 at 4. Plaintiff contends that surveillance video shows that while he was trying to keep his head off the ground, Jamison put his hand on the left side of Plaintiff's head and then slammed/smashed the right side of Plaintiff's face into the concrete, splitting his lip and injuring his face and neck, while placing his knee into Plaintiff's neck and spine. ECF No. 1-1 at 4 - 5; see also ECF No. 1 at 8 – 9. Jamison

4

also squeezed the cuffs on Plaintiff's wrists so tightly that it cut into his skin and drew blood. ECF No. 1 at 9.

Plaintiff contends that the Defendants then fabricated a false incident report against him, saying that he and Jackson "exchanged blows" in the altercation, when video surveillance shows it was not Plaintiff who fought with Jackson, but Jackson who attacked Plaintiff until Plaintiff struck back in self-defense. ECF No. 1-1 at 2.

Next, Plaintiff contends that he was placed in the Special Housing Unit ("SHU") after the incident, where he was deprived of access to the courts, religious services, and family communication. ECF No. 1 at 8; ECF No. 1-1 at 3.  As a result of the disciplinary hearing over the incident, he was sanctioned with the loss of 27 days of Good Conduct Time ("GCT"), increasing the length of his sentence. ECF No. 1 at 8. Adding insult to injury, Plaintiff contends that Jackson's incident report was expunged, but his was not. ECF No. 1-1 at 5 – 6. In an attached unsigned/undated "Sworn Affidavit," Plaintiff impliedly raises a claim of deliberate indifference to serious medical needs, stating that after the incident, "I did NOT be afforded [sic]  ANY type of medical attention." See ECF No. 1-2 at 1 (emphasis in the original).

Plaintiff contends that he sustained permanent scars to his face and wrists, has recurrent neck pain, and experiences mental anguish over being assaulted while in a helpless position. ECF No. 1 at 9.

Plaintiff's responses as to whether he exhausted his administrative remedies prior to filing suit are ambiguous; at first, he indicates that he did file an informal complaint but got no response [id. at 4 -5], but then states that he did not exhaust his administrative remedies before filing suit, because "Administration would not acknowledge any of my complaints." Id. at 6. Nonetheless,

Plaintiff attaches a partial copy of a May 31, 2018 letter to "Inspector General," discussing the lack of responses to his grievances. ECF No. 1-3.

For relief, Plaintiff requests that an incident be "lodged" in defendants' files and that they be suspended and demoted, and he seeks monetary damages in the amount of $10,000.00 each from Defendants Frame, Kuhl, Weaver, Barns, and $50,000.00 from Defendant Jamison. ECF No. 1 at 9. Finally, he requests that the incident report be expunged from his record, and the 27 days of GCT be restored to him. ECF No. 1-1 at 6. Attached to his complaint are a Sworn Affidavit (unsigned/undated) [ECF No. 1-2]; a partial copy of a May 31, 2018 hand-written letter from Plaintiff to "Inspector General" [ECF No. 1-3]; a document titled Formal Complaint Pursuant to Title 18 USC §§ 1001 and 1519, again reiterating his description of the January 10, 2018 incident and his arguments regarding the same [ECF No. 1-4]; and a copy of a January 10, 2018 Incident Report # 3076173. ECF No. 1-5 at 1 – 3.

## B. **Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

Defendants contend that the case should be dismissed or summary judgment granted in their favor because:

1) Plaintiff failed to exhaust his administrative remedies and admits the same [ECF No. 43 at 11];

2) Plaintiff's claims are not cognizable under Ziglar v. Abassi[4] [id. at 12];

3) Plaintiff's instant complaint fails to assert cognizable Bivens claims for other reasons [id. at 23];

a) the complaint should be dismissed pursuant to 28 U.S.C. § 1915A as frivolous and malicious; moreover, Plaintiff has also misstated his litigation history, affirmatively claiming he has never previously had a case dismissed as frivolous [see ECF No. 1 at 6 - 7], when he has actually accumulated one prior "strike [id. at 24];"[5]

---

[4] Ziglar v. Abassi, 137 S.Ct. 1842 (2017).

[5] See McWilliams v. Fardon, et al., N.D. Ill. 1:18cv4721, ECF Doc. 19 (1/29/2019) (dismissed as frivolous and for failure to state a claim upon which relief can be granted). Plaintiff is listed on the National Three Strikes Database.

b) Plaintiff's complaint should be dismissed under Fed.R.Civ.P. 8 because it is insufficiently pled [id. at 25 – 26];

c) although Defendants strongly deny that any false accusation was ever levied against Plaintiff, even if there were a false accusation, Plaintiff has no constitutional right to be free from false accusations [id. at 26];

d) Plaintiff's excessive force claims have no merit; the record does not support his claims of injury; the video of the incident clearly demonstrates that Plaintiff and the other inmate were involved in a mutual altercation and Plaintiff refused staff orders to cease, continuing to struggle even after being placed on the ground; and the amount of force used was no greater than necessary to restore order and discipline [id. at 27];

e) Plaintiff has no liberty interest in avoiding confinement in administrative segregation [id. at 29];

f) Plaintiff's "access to the courts" claim lacks merit and is insufficiently pled [id. at 3- 31];

g) Plaintiff's claim regarding denial of family contact while in the SHU lacks merit, fails to state a constitutional violation, and is insufficiently pled [id. at 32 – 33];

h) Plaintiff's claim fails to allege personal involvement against most of the defendants [id. at 32]; and

4) the Defendants are entitled to qualified immunity. Id. at 32.

## C. **Plaintiff's Response(s) in Opposition**

Plaintiff's two responses in opposition, both filed on September 11, 2020,[6] reiterate the facts alleged in great detail, repeat his arguments, and attempt to refute the Defendants' on the same. Plaintiff now avers that he has exhausted his administrative remedies. ECF No. 86 at 3 – 4. He attaches another copy of the same unsigned/undated "Sworn Affidavit"[7] that was attached to his complaint, which also reiterates his claims and argument. ECF No. 86-1 at 1.  He contends that his raised his claims "to the attention of Regional, through the proper remedies allowed to me, by

---

[6] The two responses total 26 pages of mostly hand-written argument with several type-written exhibits, well within the page restrictions for memoranda in response to dispositive motions as set forth in LR PL P 11(b).

[7] The declaration was prepared with a signature line for March, 2018, but never signed or dated. See ECF No. 86-1 at 3.

writing a BP-10, ie [sic], ID#923820-R2." Id. at 2.   He expressed his fear of FCI Gilmer staff and requests to be moved, because he fears retaliation for filing suit. Id. at 2 – 3.

Plaintiff's second response contends that he cannot respond to the video surveillance DVD because he has not seen the video that was submitted to the Court, and the ones shown to him had no time stamp that matched that described in defendants' counsel's response. ECF No. 87 at 1. He reiterates his claim that the video was altered in some way, insisting that Defendants "clearly have multiple footages of the same incident[.]" Id.  at 1 – 2. He contends that the Defendants have misled the Court regarding his injuries and their depiction of the event. Id. at 2.  He makes multiple allegations of various ways to prove the evidence against him was fabricated. Id.

Plaintiff argues that because inmates who allege excessive force are referred to "OIA" and "OIG," that that is the administrative remedy process for that type of complaint, and thus, it constitutes complete exhaustion of all administrative remedies. Id. at 3.   He contends that Defendants' argument that he failed to exhaust is "deception" because they were aware of the incident via their "Investigation into Incident" report. Id. at 4. Plaintiff contends that Defendants' argument that Plaintiff understood how to use the administrative grievance system by noting that he had successfully used it on two prior occasions  is a further "deception" because in at least one of these grievances, he was sanctioned by his then-counselor, who was related to Defendant Frame. Id. In purported support of this, he attaches copies of a May 10, 2019 Incident Report (# 3255120) over a charge of refusing to obey an order of any staff member/being in an unauthorized area [ECF No. 87-1 at 1]; copies of grievances relating to these charges [id. at 2 – 11]; a copy of an excerpt from his Inmate Discipline Data Chronic Disciplinary Record, showing three charges.[8] Id. at.

---

[8] The three violations he was charged with were the fighting charge at issue in this action; a stealing charge; and a charge of "being in an unauthorized area." See ECF No. 87-1 at 12.

Plaintiff details numerous ways in which the sanctions he received for these other charges were wrongful.  Id. at 4 – 5.

Plaintiff argues that his claim is cognizable under Bivens, because "staff attacked a non-resisting handcuffed prisoner while officers wrote false reports to cover incident . . . stating they did not report to the incident yet wrote memorandums [sic] that . . . [stated] they witnessed McWilliams fighting." Id. at 5. Therefore, he contends that because the BOP took no action "is reason enough for Bivens context to be expanded to give relief and consequence to this type of behavior."  Id. at 5 – 7.

Plaintiff reiterates his allegations of excessive force; his injuries, and the "fabricated" evidence, and insists that review of the video surveillance footage will clarify the issue. Id. at 8 – 9.

Plaintiff attempts to refute the Defendants' argument that he failed to allege personal involvement of the defendants, contending that all named defendants filed memoranda for use in his DHO hearing to find him guilty of an act he did not commit. Id. He argues that their memoranda were false if they claimed to not have responded. Id. Finally, Plaintiff argues that Defendants are not entitled to qualified immunity. Id. at 9 – 10.

## D. **Defendants' Reply**

Defendants stand upon the fact and argument previously asserted and reiterate their request that the complaint be dismissed. ECF No. 93 at 1. Defendants "again address Plaintiff's repeated and incorrect assertions" regarding not having been able to view all Defendants' video evidence and the claim that the video evidence was altered, and again deny the same. Id. In support, they attach a copy of a sworn Declaration of Evan Aldridge, BOP Special Investigative Services ("SIS") Technician ("Aldridge Decl."), ECF No. 93-1.

**E. <u>Plaintiff's Reply/Objections to Memoranda by Defendants</u>**

Plaintiff's additional response [ECF No. 94] is a surreply, which under the local rules of this District, may not be filed; thus it will not be considered by the undersigned. LR PL 11(d).

**F. <u>Plaintiff's Addendum to Plaintiff's Response to Defendants Motion to Dismiss [sic]</u>**

Plaintiff's additional response [ECF No. 101] is a surreply, which under the local rules of this District, may not be filed; thus it will not be considered by the undersigned. LR PL 11(d).

**III. <u>Standard of Review</u>**

**A. <u>Motion to Dismiss, Fed. R. Civ. P. 12(b)(1)</u>**

Under Federal Rule of Civil Procedure 12(b)(l), a party may file a motion to dismiss for lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that subject matter jurisdiction exists." <u>Evans v. B.F. Perkins Co.</u>, 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(l), a court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." <u>Id.</u> (internal quotation marks omitted). A court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Id.</u> (internal quotation marks omitted). When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" <u>Owens-Illinois, Inc. v. Meade</u>, 186 F.3d 435, 442 n.4 (4th Cir. 1999).

**B. <u>Motion to Dismiss, Fed.R.Civ.P. 12(b)(6)</u>**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to

support his or her allegations. <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct.1955, 167 L. Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id.</u>; <u>see</u> <u>also</u> <u>Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc.</u>, 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." <u>Id.</u>

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. <u>See</u> Fed.R.Civ. P 8 (providing general rules of pleading), Fed.R.Civ. P. 9 (providing rules for pleading special matters), Fed.R.Civ. P. 10 (specifying pleading form), Fed.R.Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed.R.Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.) <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

McWilliams is representing himself, which requires the Court to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); <u>Haines v. Kerner</u>,

404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

## C. Motion for Summary Judgment, Fed.R.Civ.P. 56

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must

review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita</u>, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  <u>Id.</u> This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' <u>Anderson</u>, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, 475 U.S. at 587.

## IV. <u>Analysis</u>

### A. <u>Exhaustion under §1997e</u>

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A <u>Bivens</u> action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. <u>Porter v. Nussle</u>, 534

U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[9] and is required even when the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84 - 85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101 - 102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, et seq. If the prisoner achieves no satisfaction informally, he must file a written complaint, a Request for Administrative Remedy to the warden of the institution on the proper form (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the Regional Director of the BOP using the proper form (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction from the Regional Office, the inmate then  completes the administrative remedy process by appealing the decision to the Office of General Counsel in Washington D.C., or

---

[9] Porter, 534 U.S. at 524.

"Central Office," using the proper form (BP-11) within 30 days of the date the Regional Director signed the response.[10] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; <u>Gibbs v. Bureau of Prison Office</u>, 986 F.Supp. 941, 943 (D. Md. 1997). The General Counsel's written response to the inmate's appeal is the final decision of the administrative remedy process, and an inmate is not deemed to have exhausted his or her administrative remedies until the request has been filed and acted upon at all the required agency levels. <u>Id.</u>

Within the BOP record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. The alpha-numeric suffix identifies the specific level in the administrative review process. Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. <u>See</u> Williams Decl., ECF No. 69-1 at 3 – 4.  For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. Furthermore, at each level, the letter is followed by a number, for example, "F1," which indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and refiles the appeal at that level, the suffix would be "F2." <u>Id.</u>

---

[10] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint.  See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

Under § 1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

 Here, although Plaintiff's complaint avers that he did not exhaust available administrative remedies [ECF No. 1, § IV(E)] because "administration would not acknowledge any of my complaints [id., § IV(F)], nonetheless, attached to his complaint is what appears to be a partial copy of a hand-written letter from Plaintiff dated May 31, 2018, that begins "Hello Inspector

General[.]" ECF No. 1-3.  In it, Plaintiff claims to have "enclosed BP-9s Internal Affairs person that went unaddressed here by Gilmer Administrative Staff, BP-10 to region that were [sic] never responded to with a disregard receipt and every thing [sic] being mailed back to me . . . Also please notice the "administrative remedy section Federal Bureau of Prisons "stamped" received Apr. 19, 2018 on ATT#11 [sic] with the date of 4-11-18[.]"[11] Id.

Defendants argue that the complaint should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing suit. ECF No. 43 at 11 – 12.  Defendants assert that Plaintiff never filed any grievances regarding the claims at issue in this complaint. Id. Defendants point out that Plaintiff's attempts to excuse his failure to do so by arguing that the "administration would not acknowledge any of [his] complaints" [see ECF No. 1 at ] is belied by his Administrative Remedy Generalized Retrieval, which shows that since Plaintiff's arrival at FCI Gilmer, he has filed at least 20 administrative remedies over matters not at issue to the claims here, and successfully exhausted at least two of those. See Administrative Remedy Generalized Retrieval, ECF No. 43-1 at 28 - 30.[12] Moreover, they argue that Plaintiff's claim regarding administration's failure to acknowledge his complaints is speculative and unsupported by any evidence to show that the administrative remedy process was truly unavailable to him, when the record of the incident at issue here reveals that the BOP in fact took the matter very seriously, medically evaluating Plaintiff, reviewing the incident in reference to Plaintiff's disciplinary proceedings, and in conducting an investigation into staff's actions during the incident. ECF No. 43 at 12.

In the first of his two responses in opposition, Plaintiff now avers that he *did* exhaust his administrative remedies. ECF No. 86 at 3 – 4. He attaches a document titled "Sworn Affidavit"

---

[11] The BP-9s and BP-10 Plaintiff references in this letter were not included with the complaint.

[12] On May 24, 2018 Plaintiff exhausted an administrative remedy regarding a disciplinary proceeding. He exhausted another disciplinary hearing officer issue on July 18, 2018.

that is neither signed nor dated. ECF No. 86-1.  Among other things, the affidavit contends that the "same claims were brought to the attention of Regional, through the proper remedies allowed to me, by writing a BP-10, ie [sic], ID #923820-R2,[13] I have enclosed copied [sic] of all correspondence, thus far." Id. However, Plaintiff did not include copies of any administrative remedies or the referenced "correspondence."

Plaintiff's second response in opposition argues that "Defendants state that inmate complaints alleging excessive force are referred to "OIA" and "OIG," that is the Administrative Remedy process for that type of complaint." ECF No. 87 at 3. Therefore, he concludes, "[t]he fact . . .[that] "OIA" and "OIG" received McWilliams['] complaint and ordered an investigation is proof Plaintiff exhausted all available Administrative Remedies." Id. He attaches a copy of a BP-9 filed on August 5, 2019, almost four months after he filed the instant complaint, complaining about Incident Report # 23255120[14] that was issued on May 10, 2019 and resulted in a finding of guilt on May 13, 2019, and requesting that it be expunged. ECF No. 87-1 at 5. Also attached is a copy of an email string of "Inmate Request to Staff," between Plaintiff and various staff members on August 21 – 22, 2019, regarding an inmate work assignment and a finding that Plaintiff was found guilty of a "Code 307 on May 13, 2019, Refusing to Obey an Order." ECF No. 87-1 at 7.

Next, Plaintiff attaches a copy of a BP-10, dated December 6, 2019, eight months after he filed his complaint, appealing the May 10, 2019 Incident Report # 3255120. ECF No. 87-1 at 8. It was stamped as received by the Mid-Atlantic Regional Office on January 4, 2019, and again on

---

[13] Attached to his second response in opposition, Plaintiff also attaches a BP-10 dated November 21, 2017, wherein he challenged a lost BP-9, in Administrative Remedy # 923820-R1, saying it had been "mishandled," lost by the warden, and never received. ECF No. 87-2.  This Administrative Remedy is also reflected on Plaintiff's May 1, 2020 Administrative Remedy Generalized Retrieval, but it is apparent that this grievance originated in 2017, well before the claims at issue in this complaint. See ECF No. 43-1 at 29 – 30.

[14] This Incident Report # 23255120 has nothing whatsoever to do with the claims at issue here; at issue here are the claims arising out of Incident Report # 3076173, issued on January 10, 2018.

March 30, 2020. <u>Id.</u> It was assigned Administrative Remedy # 1003223-R2. <u>Id.</u>   The BP-10 continues onto the next page. <u>See</u> ECF No. 87-1 at 9. There is also a Regional Administrative Remedy Appeal for Remedy ID. 1003223-R2, dated May 25, 2020, noting that the incident report was remanded for rehearing. <u>Id.</u> at 11.

However, none of the above 2019 – 2020 Administrative Remedies, all filed well after the instant complaint was filed on April 11, 2019, have anything whatsoever to do with Plaintiff's excessive force claim against  FCI Gilmer staff who restrained him after the fight on FCI Gilmer's compound on January 10, 2018, detailed in Incident Report # 3076173; his claims regarding the fabricated incident report; his placement in the SHU where he was allegedly deprived of his religious rights, access to the Courts, and family communication, the increased the length of his sentence by the loss of GCT, or any deliberate indifference to his medical needs.  Thus, they provide no support for Plaintiff's contention that he did in fact exhaust his claims.

There is, however, attached to Plaintiff's "Addendum to Plaintiff's Response to Defendants' Motion to Dismiss [sic]"[15] a copy of a March 14, 2018 BP-10 assigned Administrative Remedy # 935760-R1, challenging the DHO's refusal to accept his claim of self-defense in the fight with inmate Jackson on January 10, 2018; it was received by BOP Regional Counsel on April 2, 2018. <u>See</u> ECF No. 101-3 at 1. Nonetheless, this challenge is to a DHO decision resulting in a loss of GCT, a claim not cognizable in a <u>Bivens</u> action.[16]   Moreover, even though this Administrative Remedy peripherally mentions the date of the incident at issue in Plaintiff's complaint, it too does not exhaust Plaintiff's administrative remedies with respect to his claims of a fabricated incident report; his placement in the SHU where he was deprived of his religious

---

[15] This "Addendum" is one of the surreplies that Plaintiff filed without leave of Court that will not be considered.

[16] Should Plaintiff choose to pursue such a claim, he is free to raise it in a petition for writ of habeas corpus under 28 U.S.C. § 2241.

rights, access to the Courts, and family communication, the increased sentence from the loss of GCT, or any claim of deliberate indifference to medical needs.

This Court has in the past dismissed lawsuits filed by inmates for failure to exhaust administrative remedies where the inmate makes claims regarding staff misconduct in a Bivens lawsuit. See Pagan v. Howell, No. 3:17cv43, 2018 U.S. Dist. LEXIS 219834, *4, Trumble, R.W. (N.D. W.Va. Dec. 21, 2018) ("[E]xhaustion is a prerequisite to suit, and accordingly, Plaintiff was required to exhaust all available administrative remedies priorto filing his Bivens complaint in federal court.") *adopted by* Pagan v. Howell, 2019 U.S. Dist. LEXIS 9638, Groh, G.M. (N.D. W.Va. Jan. 22, 2019); see also Lewis v. Federal Bureau of Prisons, 2013 WL 65412, at *3 (N.D. W.Va. Jan. 3, 2013) (finding where the plaintiff could not prove he appealed at all levels, the court held "[b]ecause exhaustion of all administrative remedies prior to filing the Bivens complaint is mandatory, this Court does not have the discretion to waive the plaintiff's requirement to exhaust his administrative remedies."). Because Plaintiff has not exhausted his claims, they must be dismissed.  Normally, such a dismissal would be without prejudice, but here, because so much time has now elapsed, Plaintiff is now time-barred from finishing the exhaustion process. See 28 C.F.R. § 542.18.

## V. Recommendation

In consideration of the foregoing, the undersigned's **RECOMMENDS** that the Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment [ECF No. 42] be **GRANTED** and that Plaintiff's Complaint [ECF No. 1] be **DENIED and DISMISSED with prejudice for failure to exhaust.**

Further, the undersigned **RECOMMENDS** that Plaintiff's pending Motion to Suspend and/or Continue Roseboro Notice/Defendant's Motion to Dismiss or in the Alternative, Motion

for Summary Judgment (construed as Motion to Amend/Correct). ECF No. 74; Motion for Court Review of Video Footage and Sanctions Against Defendants' Counsel for Tamperering [sic] with Evidence by Giving Plaintiff Altered/Modified Video Footage Hendering [sic] Plaintiff['s] Ability to View Evidence and Respond [ECF No. 79]; a Motion to Amend Request for Sanctions and Request to Strike Government[']s Exhibit [ECF No. 80]; and another Motion for Discovery [ECF No. 81]; Motion to Reconsider Plaintiff's Motion to View Video Evidence/Objection to Ruleing [sic] [ECF No. 85]; Motion to Amend Complaint [ECF No. 95]; Motion to Reconsider Order Denying his Motion for Discovery and Request for Inclusion of Additional Facts [ECF No. 97]; Motion to Reconsider Order Denying Sanctions, and Request for Inclusion of Additional Facts [ECF No. 98] all be **DENIED as moot**.

The parties shall have **fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is further directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet, and to transmit a copy electronically to all counsel of record.

In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: January 21, 2021

/s/ *Michael John Aloi*

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE